RECORD NO. 12-2267

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

**DEBORAH ZELLARS,**

*Plaintiff-Appellant,*

v.

**NEXTECH NORTHEAST, LLC,**

*Defendant-Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

**REPLY BRIEF OF APPELLANT
DEBORAH ZELLARS**

David Hilton Wise
WISE & DONAHUE, PLC
Suite 302
11325 Random Hills Road
Fairfax, Virginia 22030
(703) 934-6377
dwise@wisedonahue.com

*Counsel for Appellant
Deborah Zellars*

April 29, 2013

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ...................................................................................................1

    A.    The trial court erred when it construed the facts in favor of Nextech, the moving party, instead of in favor of Zellars, the non-moving party, when it granted the motions in limine and motion for summary judgment. ........................2

    B.    Nextech's destruction of the evidence deprived Zellars from evidence of the particular type of chemicals that Nextech had installed in the refrigeration system and she did not receive any inferences in her favor when the District Court granted the underlying motions. ................................................................6

    C.    Nextech incorrectly argues that an expert has to be an expert in all things in order to testify in a toxic tort case. .........................................................................8

    1.    Robert K. Simon, PhD. ................................................................................9

    2.    Raymond Singer, PhD. ..............................................................................10

    3.    Vandana Sharma, M.D. .............................................................................11

    D.    Zellars does not have to establish that she has a special relationship with Nextech to recover for personal injuries caused by Nextech's negligence. .........13

CONCLUSION ......................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*Blake Constr. Co. v. Alley*, 233 Va. 31, 353 S.E. 3d 724 (Va. 1987) ............... 14, 15
*Burdette v. Marks*, 244 Va. 309, 421 S.E.2d 419 (1992)..........................................14
*Cavallo v. Star Enter.*, 100 F.3d 1150 (4th Cir. 1996). .............................................9
*Cavallo v. Star Enter.*, 892 F. Supp. 756, (E.D. Va. 1995), *aff'd in part*, 100 F.3d 1150 (4th Cir. 1996)...................................................................................................6
*Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir. 1979) ...........................5
*Crowder v. Vandendeale*, 564 S.W. 2d 879 (Mo. 1978) .........................................14
*Dalldorf v. Higgerson-Buchanan, Inc.*, 402 F.2d 419 (4th Cir. 1968)....................14
*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ................................................................................................................9
*Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 523 S.E.2d 826 (2000)...14
*Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446 (4th Cir. 2004)................................7
*Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 509 S.E.2d 494 (1999) ....................14
*Kristensen v. Spotnitz*, 2011 U.S. Dist. LEXIS 107027, 86 Fed. R. Evid. Serv. 793 (W.D. Va. 2011)......................................................................................................9
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) ...........................................................................................6
*Meng v. Drees Co.*, 77 Va. Cir. 442 (Va. Cir. Ct. 2009) .........................................15
*Morrison-Knudsen Co. v. Wingate*, 254 Va. 169, 492 S.E. 2d 122 (Va. 1997) ......15
*Okoli v. City of Baltimore*, 648 F.3d 216 (4th Cir. 2011)........................................5
*Paoli R.R. v. Monsanto Co.,* 916 F.2d 829 (3d Cir. 1990) .......................................9
*Penn. Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190 (E.D. Va. 1987).......................5
*Ray Commc'n, Inc. v. Clear Channel Commc'n, Inc.*, 673 F.3d 294 (4th Cir. 2011) ................................................................................................................................5
*Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir. 1995) .............................8
*Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 540 S.E.2d 134 (2001)..............14

## **INTRODUCTION**

Plaintiff and appellant, Deborah Zellars ("Zellars"), files her reply to the Corrected Response Brief ("Appellee's Brief") filed by Nextech Northeast, LLC ("Nextech") to address four points. First, Nextech's recitation of the facts assumes that all facts should be viewed in a light most favorable to Nextech, not Zellars, the non-moving party. While it is natural to applaud the District Court's opinion that ruled in its favor, Nextech ignores the fact that the District Court did not view the facts in a light most favorable to Zellars, the non-moving party, which is required in disposing of a case without an evidentiary hearing.

Second, by not ruling on Zellar's motion for sanctions for spoliation, Zellars was not given any benefit of any inferences that were properly hers as the non-moving party. The trial court ruled that Zellars' experts lacked sufficient facts about the toxicity of the specific type of Freon to which Zellars was exposed. By destroying the evidence, Nextech prevented Zellars' experts from testing the particular type of refrigerant to which Zellars was exposed. Zellars should have been allowed an inference that the specific type of Freon to which she was exposed was toxic when the trial court ruled on the underlying motions in limine.

Third, Nextech wants this Court to look at each of the opinions of Zellars' experts in a vacuum. Zellars presented evidence from qualified experts establishing the chain of proximate cause, each of whom offered opinions limited

to their own particular area of expertise. Dr. Robert Simon, a toxicologist and chemist, and Dr. Raymond Singer, a neuropsychologist and neurotoxicologist, have extensive knowledge and understanding on the issue of toxicity of Freon. Dr. Vandana Sharma, Zellars' treating physician and Board certified neurologist, properly performed a differential diagnosis. She was not permitted to testify simply because she was not a toxicologist or an expert on Freon. However, all three experts, each of whom offered reliable and relevant opinions within their particular area of expertise, together created a chain of expert testimony that the Freon leak caused Zellars' injuries.

Finally, Nextech incorrectly argues that summary judgment was nonetheless proper because Zellars failed to show she has a special relationship with Nextech. All the cases cited by Nextech, however, involved the common law duty to protect against criminal acts of a third party. This case involves the common law duty not to create a risk of foreseeable personal injury to another, and Nextech did owe a duty to Zellars. As a result, it was error to grant summary judgment.

**A. The trial court erred when it construed the facts in favor of Nextech, the moving party, instead of in favor of Zellars, the non-moving party, when it granted the motions in limine and motion for summary judgment.**

Nextech wants this Court, like the District Court below, to view all facts in its favor rather than in favor of Zellars, the non-moving party. Nextech seeks to reverse this inference by relying on the deposition testimony of Abdul Sayidi

2

("Sayidi"). Simply stated, Sayidi is not a credible witness. According to Nextech's service records, Sayidi visited the store at least three times in September 2009. (JA 771 and JA 1536 (September 9, 2009 work order); JA 1539 (September 11, 2009 work order), and JA 1542 (September 16, 2009 work order). Sayidi found the leak only after the fire department discovered the Freon leak on September 16. The Freon leak was inside the freezer due to the leaking Schrader value. (JA 770). According to the Nextech's own service and billing records, Sayidi charged the rooftop mounted condensing unit with 25 pounds of Freon 404a on September 9, 2009. (JA 1536). Sayidi added the Freon without fixing the leak or finding the source of the leak, thus the overcharged Freon began leaking immediately. Sayidi apparently did not know that the refrigeration system could only hold approximately 15 pounds of Freon.[1] This freezer is connected to a rooftop mounted condensing unit, but the entire system is a sealed system. The source of the leak – a leaking Schrader valve – was found on September 16, 2009, to be <u>inside the freezer case</u>. This means the excess Freon from the 25 pound

---

[1] When Nextech performed the triple evacuation of the system to remove all traces of the existing refrigerant on August 24, 2011, Nextech recharged the system to 15 lbs. (JA 790). According to Nextech's expert, Raymond K. Schneider, this system could only hold approximately 10 lbs. of Freon. (JA 1234). Whether it could hold 10 or 15 pounds, the excess would escape from the system by any leak that then existed. In this case, the leak occurred inside the freezer case, where it created the unreasonably dangerous condition. Had the leak occurred at the outside, rooftop condenser unit, Zellars would not have suffered any adverse effects from the Freon.

3

overcharge leaked into the freezer case inside the store from September 9 to September 16, 2009.[2]  An ounce of refrigerant leaking into the freezer would have amounted to levels of over 1,000 parts per million inside the freezer.  (JA 1455).

Nextech assumes that Sayidi's credibility is unquestioned because he testified in his deposition that his handwritten notes on the September 9th work order show "2.5" – not 25 pounds.  (JA 1530).  However, Nextech thought it was 25 pounds and billed Rite Aid accordingly.  (JA 747; JA 799).  Both of Nextech's own experts opined that the handwritten notes were initially interpreted to be <u>25 pounds</u>.  (JA 1773, n. 1, and JA 1234).  It was Nextech's lawyer who first suggested that Sayidi had written down 2.5 pounds.  (JA 1528).  Because he was apparently uncomfortable with this conversation, Sayidi appeared at his deposition with two separate attorneys.  (JA 1518).  It was Nextech who contacted Sayidi on the phone prior to the deposition and suggested that his handwritten notes said 2.5, not 25, pounds, before Sayidi even saw his notes.  (JA 1520-22).  Nextech can rely on Sayidi's testimony at trial.  However, Zellars is not bound by it and the credibility of this particular witness should have been left to the jury.

In determining whether a genuine issue of fact exists, all "facts and inferences <u>must be construed in the light most favorable to the non-moving party</u>.  *Cales*, 46 F.R.D. at 39; *T.I. Swartz Clothiers, Inc.*, 15 B.R. at 593.  The Court must

---

[2]  According to Zellars' refrigeration expert, adding 25 pounds of refrigerant was an overcharge and outside the standard of care.  (JA 1455).

4

give the nonmoving party "the benefit of all favorable legal theories invoked by the evidence so considered." *Penn. Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190, 1192-93 (E.D. Va. 1987) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). "Where the <u>credibility is, or may be crucial, summary judgment becomes improper</u> and a trial indispensable." *Cales*, 46 F.R.D. at 40; *see Ray Commc'n, Inc. v. Clear Channel Commc'n, Inc.*, 673 F.3d 294, 305 (4th Cir. 2011); *Okoli v. City of Baltimore*, 648 F.3d 216, 231 (4th Cir. 2011).

Nextech also seeks to gain the benefit of all inferences from the testimony of Captain Nicola Salameh from the Arlington County Fire Department regarding the timing of the discovery of the leak. Captain Salameh was called to the store on September 16, 2009, in response to complaints that customers and employees had been complaining of headaches, lightheadedness, dizziness, and feeling sick inside the store. (JA 1475, 1477-78, and 1513). Captain Salameh immediately noticed a "faint stinging sensation" on his cheeks when he went to the store, and he was the one who asked about any problems with the freezer and refrigeration systems. (JA 1483). Captain Salameh found the Freon leak and informed the manager that Rite Aid would have to have it fixed "immediately" or he would close the store. (JA 1488 and 1491). Only after the Fire Department got involved and public safety issues were raised did Nextech find the source of the leak inside the freezer case.

5

Nextech argues that "Zellars was not present during the September 16, 2009 incident." (See Appellee's Brief, p. 8). However, the "incident" that occurred on September 16 was the discovery of the leak that had remained undetected for at least a week. Prior to its discovery, three employees, including Zellars, had complained about not feeling well prior. (JA 1374 and 1561). Zellars' had worked the evening shift before the leak was discovered, and her typically duties required her to spend time straightening up and restocking the freezer case. (JA 1367, 1369-70, and 1629).

All of these facts are just a sampling of the inferences that Nextech wishes to have this Court construe in its favor. However, these facts must be construed in Zellars' favor since the motions were decided without an evidentiary hearing. *See Cavallo v. Star Enter.*, 892 F. Supp. 756, 757, n. 1 (E.D. Va. 1995), *aff'd in part*, 100 F.3d 1150, 1159 (4th Cir. 1996), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

 **B. Nextech's destruction of the evidence deprived Zellars from evidence of the particular type of chemicals that Nextech had installed in the refrigeration system and she did not receive any inferences in her favor when the District Court granted the underlying motions.**

After Zellars served Nextech with her complaint, Nextech removed all traces of the existing Freon by performing a triple evacuation of the freezer system, which effectively removed all traces of the particular refrigerant to which Zellars had been exposed. This was the first time a triple evacuation had ever been

6

performed on the Rite Aid freezer system. (JA 787, 809, and 835). Because Nextech destroyed the evidence, Zellars had no way to test the particular chemicals to which she was exposed in September 2009. The proper refrigerant to use in the system was R404a, but Zellars' experts noticed discrepancies in other Nextech service records that indicate the possibility that Nextech might have mixed refrigerants in the freezer.[3]

Nextech's spoliation of evidence prevented Zellars from testing the type(s) of refrigerants in the freezer. The spoliation of evidence rule allows the drawing of an adverse inference against a party whose intentional conduct causes the destruction of evidence or against one who fails to preserve evidence. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004). On August 24, 2011, Nextech destroyed the refrigerant in the freezer system that it knew was relevant to the pending litigation and failed to preserve it as evidence. Nextech's spoliation of evidence was intentional, willful and deliberate, and a showing of bad faith is not required. *Buckley v. Mukasey*, 538 F.3d 306, 322 (4th Cir. 2008). The trial court has broad discretion to choose the appropriate sanction, which should be "molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). The purpose of imposing sanctions for spoliation of evidence is to level the

---

[3] Nextech technicians had installed the wrong type of Freon in the refrigerator cooler. (JA 1423, 1449-50, 1453, and 1456).

7

evidentiary playing field and to sanction the improper conduct. *Id.* Remedies include allowing a jury to draw adverse inferences from a party's destruction of evidence. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).

In this case, Zellers should have been entitled to an adverse inference against Nextech, which should have been considered as part of the District Court's ruling on the motions in limine and summary judgment. Zellars specifically requested jury instructions that Nextech may have mixed R22 and R404a refrigerant in other refrigerator systems inside the Rite Aid store. Zellars also requested an instruction that the jury may infer that her experts may base their opinions on the toxicity of any type of Freon refrigerants given Nextech's willful spoliation of evidence. This was not done, and instead, the District Court inferred that the Freon to which Zellars was exposed was not toxic.

### C. Nextech incorrectly argues that an expert has to be an expert in all things in order to testify in a toxic tort case.

In its brief, Nextech argues that each of Zellars' experts were required to be an expert in Freon. Zellars' experts, however, each gave their own opinions within their particular area of expertise and formed a chain of causation that demonstrates Nextech's negligence caused Zellar's injuries. Expert testimony is admissible under Rule 702 if proposed testimony is regarding scientific knowledge that "will assist the trier of fact to understand or determine a fact at issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469

8

(1993). The factors articulated by the Supreme Court in *Daubert* were meant to give the trial court "broad latitude to consider whatever factors bearing on validity that the court finds to be useful." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). It is meant to be a flexible inquiry, focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached. *Id.* at 261 (citing *Daubert*, 509 U.S. at 594-95.). *Daubert* was intended to be a "liberalization, not a tightening, of the rules controlling admission of expert testimony." *Cavallo v. Star Enter.*, 100 F.3d 1150, 1158 (4th Cir. 1996).

### 1. Robert K. Simon, PhD.

Dr. Simon is an expert in analytical chemistry, toxicology, and environmental assessment, and was qualified to give opinions on general causation as a toxicologist. *See Kristensen v. Spotnitz*, No. 3:09-cv-00084, 2011 U.S. Dist. LEXIS 107027, *35, 86 Fed. R. Evid. Serv. (Callaghan) 793 (W.D. Va. 2011) ("an expert who is not a medical doctor might be 'otherwise qualified' to give medical causation testimony."); *see also, Paoli R.R. v. Monsanto Co.*, 916 F.2d 829 (3d Cir. 1990); *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 917 (3d Cir. 1991). Dr. Simon has the knowledge, skill, experience, training, and education in toxicology to discuss general causation and health effects that can be caused by Freon. (JA 84 and 1746.) Dr. Simon testified that Zellars' condition was consistent with the health effects of overexposure to R-404A, which is entirely within the area of

9

expertise of a toxicologist. (JA 1743). Dr. Simon is qualified to testify about Freon chemicals and the threshold level in which humans experience symptoms of overexposure. (JA 1744). His opinions are based on his scientific research, not "mere speculation," and it was an abuse of discretion for the District Court to exclude the testimony of a qualified toxicologist.

### 2. Raymond Singer, PhD.

Dr. Singer opined that Ms. Zellars "has nervous system dysfunction from neurotoxicity . . . consistent with and caused by poisoning with refrigerant containing fluorocarbons." (JA 1866). Dr. Singer formed his own opinion to a reasonable degree of scientific certainty that Zellars' nervous system dysfunction was caused by poisoning with refrigerant containing fluorocarbons, and it was an abuse of discretion to exclude him, a neuropsychologist and neurotoxicologist, simply because he is not a medical doctor.

Dr. Singer, like Dr. Simon, analyzed the Freon by looking at the individual chemical components. (JA 1643, 1652-59, and 1669). He looked at the chemical components of R404a and other Freons to determine the neurotoxicity. (JA 1646-47). Dr. Singer was able to conclude that Zellars' symptoms are consistent with those articulated on the material data safety sheet ("MSDS") for R404a – the "most plentiful ingredient in this produce is 1,1,1-Triflourethene" – "Acute effects: May result in dizziness, headache, confusion, incoordination and loss of consciousness.

Chronic effects: Diseases of the central nervous system." (JA 1648 and 1671) (emphasis added). Dr. Singer also reviewed information on the second most plentiful ingredient of R404a, Pentafluoroethane, from Toxnet, a branch of the United States National Library of Medicine that is relied upon by toxicologists from around the world:

> Toxnet clearly states that neurologic outcomes of such exposure include: Headache, dizziness, and disorientation are common. Cerebral edema may be found on autopsy. A syndrome of impaired psychomotor speed, impaired memory and learning, and emotional lability has been described in workers with chronic occupational exposure to fluorinated hydrocarbons.

(JA 1648).

Dr. Singer is qualified to make neuropsychological and neurotoxicological diagnoses using established principles of differential and clinical diagnosis. (JA 943-44 and 1664). Dr. Singer took into consideration other possible exposures to chemicals and the like and excluded them. (JA 1118-19, 1665, and 1671). Dr. Singer also considered Zellars' past symptoms, but found them not contributory. (JA 1114-16).

### 3. Vandana Sharma, M.D.

Dr. Vandana Sharma is Zellars' treating physician and a board certified neurologist who first evaluated Ms. Zellars on August 31, 2011, and prepared a report five months later, dated February 24, 2012, in which she opined, to a reasonable degree of medical certainty, that Zellars' exposure to refrigerant gas

11

while working at the Rite Aid store in September 2009 caused Zellars' neurological condition. (JA 1459). Dr. Sharma diagnosed Zellars with diffuse neurotoxic process caused by toxic exposure, and found that the injuries are permanent. (JA 434-35). Dr. Sharma, as a practicing neurologist, is not required to be expert in toxicology or refrigerant chemicals. Instead, Dr. Sharma used a differential diagnosis to diagnose Zellars with her Parkinsonian-like condition (JA 403), which is a generally accepted diagnostic technique. *Westberry*, 178 F.3d at 262. Dr. Sharma was able to rule out a neurological syndrome and rule in toxic or traumatic event or insult as the cause of Ms. Zellars' condition based on the fact that her condition involved multiple systems, including the central and peripheral nervous systems and muscular system. (JA 434-35 and 472). Dr. Sharma considered Zellars' prior medical history and all traumatic events and other exposures in determining the cause of Ms. Zellars' condition. (JA 436, 442, and 1459).

The trial court erred when it ruled (without an evidentiary hearing) that Dr. Sharma had recanted her opinion on causation. Dr. Sharma reiterates her opinion that Zellars is suffering from "a diffuse neurotoxic process" based on her toxic exposure. (JA 433-35). While Dr. Sharma could not specifically testify regarding Freon as a chemical, she was able to pin point the cause as being a toxic exposure at the Rite Aid store. (JA 382-83, 390, 403-04, and 428). Dr. Simon and Dr.

Singer are the toxicologists who will offer expert opinions regarding general causation and the harmful effects of Freon exposure, while Dr. Sharma will testify regarding Zellars' neurological symptoms resulting from that particular exposure. Dr. Sharma opines that based on her differential diagnosis and to a reasonable degree of medical certainty, Zellars is suffering symptoms caused by a toxic exposure. Teamed with the opinions of Dr. Simon and Dr. Singer, it was error to exclude Dr. Sharma because she does not hold herself out as an expert on Freon.

According to the Fourth Circuit, differential diagnosis is a technique that "has widespread acceptance in the medical community, has been peer reviewed, contains standards for controlling its operation, is generally accepted, and is used outside of the judicial context." *Westberry*, 178 F.3d at 262 (quoting *Brown v. Se. Penn. Transp. Auth.*, 35 F.3d 717, 458 (3d Cir. 1994). "[A] medical opinion on causation based upon a reliable differential diagnosis is sufficiently valid to satisfy the first prong of the Rule 702 inquiry." *Id.* Dr. Sharma properly performed a differential diagnosis of Zellars, and it was error to exclude her testimony.

### D. Zellars does not have to establish that she has a special relationship with Nextech to recover for personal injuries caused by Nextech's negligence.

Finally, Nextech argues that a special relationship is required for there to be any duty owed to Zellars, and according to Nextech, Zellars failed to prove that it had a special relationship with Nextech. (Appellee's Brief pp. 42-44). Nextech

13

cites to four cases in support of this argument: *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 136, 509 S.E.2d 494, 497 (1999), *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 107, 540 S.E.2d 134, 139 (2001), *Burdette v. Marks*, 244 Va. 309, 312-13, 421 S.E.2d 419, 421 (1992), and *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 134, 523 S.E.2d 826, 831-32 (2000)   However, all of these cases involve the special relationship needed to assign a duty to protect a person from the criminal acts of a third party.

This case does not involve such a claim of negligence. Zellars' claim is based upon the duty It is an "elementary principle of negligence law that a person who creates a risk of foreseeable harm to others is under a duty to exercise reasonable care to prevent the threatened harm." *Dalldorf v. Higgerson-Buchanan, Inc.*, 402 F.2d 419, 420-22 (4th Cir. 1968); *Blake Constr. Co. v. Alley*, 233 Va. 31, 353 S.E. 3d 724, 726, 3 Va. Law Rep. 1868 (Va. 1987) (where personal injury is threatened, a duty in negligence has been readily found). Entering into a contract does not change this common law duty to avoid causing an unreasonably dangerous condition.  This issue was recently addressed by the Circuit Court of Loudoun County, Virginia:

> Generally speaking, there is a duty to exercise reasonable care in how one acts to avoid physical harm to persons and tangible things. Entering into a contract with another pursuant to which one party promises to do something does not alter the fact that there was a preexisting obligation or duty to avoid harm when one acts.

14

*Meng v. Drees Co.*, 77 Va. Cir. 442, 444-445 (Va. Cir. Ct. 2009), *citing* W. Page Keeton, Prosser and Keeton on the Law of Torts 656-57 (5th ed. West 1984).

Nextech had a duty to perform its work under its maintenance and repair contract with Rite Aid using "ordinary care and skill" in order to protect third parties from physical harm. *Blake Constr. Co.*, 353 S.E. 3d at 726. To recover in negligence, a plaintiff must show that the defendant deviated from the applicable standard of ordinary care. *Morrison-Knudsen Co. v. Wingate*, 254 Va. 169, 492 S.E. 2d 122, 124 (Va. 1997). Zellars did this through her refrigeration expert, Ron Bailey, PE, whose opinion the court did not exclude. Nextech's negligence created an unreasonably dangerous condition that caused Zellars to suffer personal injuries. It was error to grant summary judgment in favor of Nextech.

## **CONCLUSION**

The Appellant, Deborah Zellars, by counsel, respectfully requests that this Honorable Court reverse the District Court's rulings and allow Zellars to present her case to a jury for final determination of Nextech's negligence.

Date: April 29, 2013  /s/ David Hilton Wise
David Hilton Wise, Esq., VA Bar No. 30828
WISE & DONAHUE, PLC
11325 Random Hills Road, Suite 302
Fairfax, VA 22030
dwise@wisedonahue.com
Telephone:  (703)934-6377
Facsimile:  (703)934-6379
*Counsel for Appellant Deborah Zellars*

15

## CERTIFICATE OF COMPLIANCE PER RULE 32(a)(7)(C)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  Appellants' Reply Brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 3,765 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Date: April 29, 2013              /s/ David Hilton Wise
                                  David Hilton Wise, Esq., VA Bar No. 30828

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on 29th day of April, 2013, the foregoing Reply Brief of Appellant was filed with the Court electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Daniel D. Barks, Esq.
>The Law Offices of Daniel D. Barks
>204 South Royal Street
>Alexandria, Virginia 22314
>dbarks@bluestarconsortium.com
>Telephone: (571) 814-3346
>*Counsel for Appellee Nextech Northeast, LLC*

>Ellis R. Lesemann, Esq.
>Amanda Morgan Blundy, Esq.
>Harvey &Vallini, LLC
>497 Bramson Court, Suite 201
>Mt. Pleasant, SC 29464
>ellisl@hvlawsc.com
>amandab@hvlawsc.com
>Telephone: (843) 388-8883
>Facsimile: (843) 388-8884
>*Counsel for Appellee Nextech Northeast, LLC*

>Micahel Allweiss, Esq.
>ALLWEISS & ALLWEISS
>5363 Central Avenue
>St. Petersburg, FL 33710
>mallweiss@aol.com
>Telephone: (727) 827-4944
>*Counsel for Appellee Nextech Northeast, LLC*

Date: April 29, 2013            /s/ David Hilton Wise
                                David Hilton Wise, Esq., VA Bar No. 30828

17